## Isaiah Atkins & another *vs.* Justin Spear.

An assignment of property, which is declared, by the second section of the United
States bankrupt act of 1841, to be void, and a fraud upon that act, is void as against
those persons only who claim by virtue of proceedings under that act.

While the United States bankrupt act of 1841 was in force, and the insolvent laws of this
State suspended, A., an insolvent debtor, made a deed of assignment of his property in
trust for all his creditors who should execute said deed and thereby release their de-
mands :  By the terms of this deed, $200 were reserved for A.'s benefit; and he paid
money to one of his creditors, to induce him to execute the deed : After the deed was
executed by most of his creditors, a creditor who had not executed it sued A., who paid
his demand in full :  After the repeal of said bankrupt act, A. took the benefit of the in-

---

solvent laws of this State, and was discharged, under their provisions, in due form: He did not include, in his schedule of property and list of creditors, the property conveyed by the deed aforesaid, nor the names of those who executed that deed: After A. was discharged under the insolvent laws, an action was brought against him, on a demand due when he made said deed of assignment, by a creditor who did not execute that deed; and A. relied, in defence, on his last discharge. *Held,* that A.'s proceedings aforesaid, before he took the benefit of the insolvent laws, did not invalidate his discharge under those laws, and that the action was barred by that discharge.

ASSUMPSIT for goods sold and delivered before the 10th of July 1842. Writ dated March 20th 1843. Trial at the last December term of the court of common pleas, before *Merrick,* J. who reported the case as follows:

"The defendant pleaded the general issue, and filed a specification of defence, that on the 6th of May 1843, he received a discharge from the debt declared on by the plaintiffs, and of other his debts, under the hand and seal of the judge of probate for this county, by virtue of the provisions of *St.* 1838, *c.* 163.

" On the trial the defendant admitted that, in July 1842, he was indebted to the plaintiffs, as was alleged in their writ; and he produced and relied on a discharge, under the insolvent act, (*St.* 1838, *c.* 163,) dated May 6th 1843. The plaintiffs then offered evidence showing that the defendant, on the 7th of November 1842, by his deed of assignment, not made conformably to the provisions of any statute, conveyed all his estate and property (except his household furniture, family provisions and clothing) to two of his creditors, for the benefit of themselves and all his other creditors, upon the following trusts· That the said assignees, after converting said estate and property into money, should, in the *first* place, reimburse themselves for all the charges and expenses of the trust; in the *second* place, pay to the said Spear the sum of $200 in such notes or accounts as he might select from certain notes and accounts forming part of said assigned property; and in the *third* place, apply the residue of the trust moneys towards payment and satisfaction of the several debts and sums of money due to such creditors of the said Spear, as became parties to said deed of assignment, in equal proportions, and without any preference or priority of payment: In consideration whereof, the creditors

who became parties to said deed released and discharged the said Spear from all debts due from him to them.

" The plaintiffs then introduced evidence (the defendant objecting) tending to show that the defendant, about the 1st of January 1843, gave to Henry Souther, one of his creditors before the said assignment, a promissory note, made by one Simpson, for about $23, and also about $2 in money, as an inducement for said Souther to become a party to said deed of assignment. It appeared that said note was one of those which formed a part of the property and effects assigned by the defendant, as aforesaid, and that it was one of those which the defendant selected and took, under the provisions of said deed of assignment, which allowed him the sum of $200 in notes and accounts; that the defendant acted in this matter, as he did, by and in pursuance of the advice of the said assignees ; that the $200 in notes and accounts were paid to the defendant, by the assignees, in three instalments, the last of which was about the 1st of January 1843 ; that the furniture, provisions and clothing, estimated by the assignees to be worth about $50, and the said $200 in notes and accounts, were reserved and paid to the defendant, at the instance of the assignees and certain other principal creditors of the defendant ; that, with the aforementioned exceptions, the defendant gave up all his property to said assignees ; that the defendant was deeply insolvent at that time, his debts amounting to about $7000, and his property assigned not exceeding $1000.

" The plaintiffs further proved that, on the 26th of November 1842, James Gibson, a creditor of the defendant, commenced an action against him, and summoned James Williams as his trustee ; and that, on the 19th of December following, said Williams, being indebted to the defendant, paid to him about $25, and that the defendant, at the same time, settled said suit of Gibson, by paying him about the same sum.

" The plaintiffs also produced and offered in evidence a copy of the schedule of the defendant, made by him at the first meeting of his creditors under his application for the benefit of *St.* 1838, *c.* 163, exhibiting his estate, property and effects, and

Atkins & another *v.* Spear.

a list of his creditors; in which schedule no mention was made of his interest in the property held by said assignees, as no persons who had become parties to said deed of assignment were named as creditors.

" No objection was made by the plaintiffs to the regularity of the proceedings under the defendant's application for the benefit of act aforesaid.

" The court ruled, and instructed the jury, that the said facts, proved and offered in evidence, did not invalidate the defendant's said discharge; and thereupon a verdict was returned for the defendant. The plaintiffs alleged exceptions to said ruling and instruction."

*W. S. Morton,* for the plaintiffs. The United States bankrupt act of 1841 was in force, when the defendant made his deed of assignment; and while that was in force, the defendant, being insolvent, could not make a valid assignment for the benefit of his creditors. Such assignment was in fraud of that act. *Alderson* v. *Temple,* 4 Bur. 2235. *Locke* v. *Winning,* 3 Mass. 325. *Nunn* v. *Wilsmore,* 8 T. R. 528. *Ingliss* v. *Grant,* 5 T. R. 530. *Harrison* v. *Sterry,* 5 Cranch, 289. *Halsey* v *Whitney,* 4 Mason, 210. *Lippincott* v. *Barker,* 2 Binn. 174. *U. States* v. *King,* Wallace, 21. *Dennett* v. *Mitchell,* 6 Law Reporter, 18.

The defendant's discharge under *St.* 1838, *c.* 163, was void; *first,* because he did not give up all his property; and *secondly,* because he made a preference, by paying one debt in full, and gave another creditor $25, as an inducement to become a party to the assignment. See *Sievers* v. *Boswell,* 4 Scott N R. 165, and 3 Man. & Grang. 524.

*Clarke & Gourgas,* for the defendant. The assignment was not in fraud of the bankrupt law, within the meaning of the second section thereof, and cannot invalidate the discharge under the insolvent law, because it was not made " in contemplation of bankruptcy." See *Morgan* v. *Brundrett,* 5 Barn. & Adolph. 296, 297. *Matter of Pearce,* 6 Law Reporter, 266. *Arnold* v. *Maynard,* 2 Story R. 349. Nor was any preference made in the assignment. See *Grant's case, & Holmes's case,* 5 Law Reporter, 11, 361.

But if the assignment were in fraud of the United States bankrupt act, the only remedy is in a court of bankruptcy, under that act.

The assignment is not void, as a fraud upon the insolvent law of 1838, and does not invalidate the defendant's discharge under that law. That law was suspended, by *St.* 1842, *c.* 71, when the assignment was made, and remained suspended till the bankrupt act was no longer in force, viz. till March 3d 1843. The defendant, therefore, could not have made the assignment in contemplation of insolvency under the insolvent law. *Gorham* v. *Stearns,* 1 Met. 366. *Davis* v. *Reynolds,* 10 Johns. 442.

The payment to Souther did not vitiate the assignment. It was paid, by advice of the assignees, out of the funds of the other creditors. And Souther's signature was not necessary to the validity of the assignment. The payment to Gibson (for aught that appears) was of a debt incurred after the assignment ; and the money paid to the defendant by Williams may have been on a note taken by the defendant under the provisions of the assignment.

The plaintiffs must make out their case, by showing that the defendant's discharge is void for causes mentioned in *St.* 1838, *c.* 163, and 1841, *c.* 124. This they have failed to do.

DEWEY, J. The defendant relies upon a discharge under the insolvent laws of this Commonwealth, as a defence to the present action. This discharge is in form correct ; and the demand of the plaintiffs was proveable under the proceedings in insolvency, and was such as would be barred by a discharge properly obtained. But it is contended that this discharge cannot avail the defendant, by reason of certain illegal and fraudulent acts of his, in relation to his property. Of these acts, the first and principal one brought to our notice is the conveyance of his property, on the 7th of November 1842, to certain persons, in trust for his creditors, but containing reservations, and securing a beneficial interest for himself.

Much argument and many authorities were introduced to establish the position, that this conveyance was in fraud of the United States bankrupt law of 1841, § 2. But, in the view we

take of the matter, that question is not important here, and cannot effect the decision of the case. The defendant has not, in his specification of matter in bar of this action, mentioned any proceedings in bankruptcy, nor relied upon any certificate of discharge under the bankrupt law. If this conveyance of his property was in violation of the provisions of the bankrupt law, the consequences of such violation would have attached to the defendant, if he had come under the operation of that law ; but until, either by his voluntary application for its benefits, or by proceedings at the instance of his creditors, he became amenable to the jurisdiction of the courts of the United States, as a bankrupt, no importance attaches to the question whether this conveyance might have been in violation of the bankrupt law. *Dodge* v. *Sheldon,* 6 Hill, 9. Nor is it of any consequence to consider, whether this conveyance might have been avoided by an attachment and levy of execution by any of his creditors. Apparently, it might have been, upon the ground of a direct reservation of $200 of the conveyed property to his own use and benefit. But the inquiry here is of a different character ; and the only ground, upon which the validity of this discharge is to be considered, is in reference to the insolvent law of 1838 *c.* 163, and the acts supplementary thereto, in force at the time when this discharge was granted. The proceedings before the judge of probate were under those statutes ; and if, by force and effect of those statutes, the discharge is valid, that is all that is necessary to be shown to maintain the defence.

The bankrupt law had been repealed, and no proceedings were had against the defendant under that law. Upon the repeal of that law, the insolvent law of Massachusetts was revived, and, with its revival, all the limitations and restrictions upon the right to a discharge revived, although the acts had occurred during its suspension. If, therefore, the alleged acts of the defendant are within the cases specified in the insolvent law of 1838, *c.* 163, or the supplementary acts, in force on the 6th of May 1843, as avoiding a discharge, then they will have the effect contended for by the plaintiffs, but not otherwise.

We have looked at these grounds of avoidance of the dis

charge, as arising under these statutes, and are of opinion that they cannot avail the plaintiffs.

1. As to the conveyance or assignment of property, executed on the 7th of November 1842. This was not a conveyance creating a preference, or priority among creditors; for the property was to be applied to the payment of the debts *pro ratâ.* 2. The delivery of property and money to Souther, to induce him to become a party to the assignment, violated no duty prescribed by these statutes. 3. If the defendant's omission to return, in his schedule of property, his interest in the property conveyed to the assignees on the 7th of November 1842, is a valid objection, it must be so under § 10 of *St.* 1838, *c.* 163. To render it availing under that statute, the concealment of this property, or omission to include it in the schedule, must have been a fraudulent concealment or omission; but no such case of fraud was proposed to be shown. 4. The payment of money to Gibson, one of his creditors, on the 26th of November 1842, was not, under the circumstances stated and relied upon, a payment by the defendant with a view of giving a preference, that should operate to vacate his discharge.

Upon the whole matter, the court are of opinion that the ruling of the court of common pleas was right; and judgment will be entered on the verdict for the defendant.